# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ADMINISTRATORS OF THE TULANE EDUCATIONAL FUND (A/K/A TULANE UNIVERSITY), *et al.*, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | **Civil Case No. 09-2428 (RJL)** |
| IPSEN PHARMA, S.A.S. (F/K/A SOCIETE CONSEILS DE RECHERCHES ET D'APPLICATIONS SCIENTIFIQUES SAS), *et al.*, | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION
(March **14**, 2011) [#22]

Plaintiffs in this case, the Administrators of the Tulane Educational Fund (a/k/a

Tulane University) ("Tulane") and David H. Coy ("Dr. Coy") (collectively, "plaintiffs")

filed this action against Ipsen Pharma, S.A.S. ("Ipsen Pharma") and Ipsen, S.A. ("Ipsen")

for correction of inventorship of several U.S. patents pursuant to 35 U.S.C. § 256. The

complaint also alleges three claims under Massachusetts state law for unfair business

practices, unjust enrichment, and constructive trust. Now before the Court is defendant

Ipsen's Motion to Dismiss for Lack of Personal Jurisdiction and for Failure to State a

Claim [Dkt. #22]. For the following reasons, the motion is GRANTED.

## BACKGROUND

Dr. Coy is a Research Professor of Medicine and Adjunct Professor of

Biochemistry at Tulane University, an educational and research institution in Louisiana.

1

Compl. ¶ 10. Ipsen is a French corporation. *Id.* ¶ 11. Ipsen and its affiliates develop and market more than twenty drugs internationally, including throughout the United States. *Id.* Ipsen holds 95.05% of the share capital and voting rights of Ipsen Pharma, one of its subsidiaries. *Id.* ¶¶ 12-13. Ipsen Pharma is the successor company to Société Conseils, de Recherches et d'Applications Scientifques ("SCRAS"). *Id.* ¶ 13. Ipsen Pharma holds, among other things, intellectual property rights for Ipsen, including the patents at issue. *Id.* ¶ 12. Ipsen Pharma's majority-owned subsidiary, Biomeasure, is a Massachusetts corporation. *Id.* ¶ 14. Neither SCRAS nor Biomeasure are a party in this case.

In November 1990, Dr. Coy, Tulane, and Biomeasure entered into an Amended and Restated Research Funding Agreement ("RFA") that superseded prior research agreements. *Id.* ¶ 16. The RFA covered Dr. Coy's research in the field of biologically active fragments and analogs of various peptides, and was amended in 1997 and 1998 to include research on glucagon-like peptides, or GLP-1 analogs having extended biological half-life. *Id.* ¶¶ 17-18. The GLP-1 research is the subject of the patents at issue in this case. The RFA granted Tulane the property rights to any research, subject to Biomeasure's right to pursue a patent, with Tulane's approval, at its own expense. *Id.* ¶¶ 19-20. Biomeasure also retained the right to an exclusive, worldwide license from Tulane of any results or any patent application or patent covering results within a certain time period and subject to certain fee and notice provisions. *Id.* ¶¶ 21-22. The RFA also accounted for various royalty payments depending on which party funded and invented the result. *Id.* ¶ 23. Plaintiffs allege in the complaint that Ipsen Pharma's predecessor,

SCRAS, funded Biomeasure's payments to Tulane in connection with the GLP-1 research. *Id.* ¶ 24.

Plaintiffs seek correction of inventorship for several patents that cover the results of this research, U.S. Patent 6,903,186 ("'186 Patent"), and all related patents claiming priority to or through the applications from which it matured, including U.S. Patents 7,268,213 ("'213 Patent") and 7,235,628 ("'628 Patent"). *Id.* ¶ 1. The relevant patent applications are U.S. utility application serial number 09/206,601 and U.S. provisional application serial number 60/111255. *Id.* The '186 Patent is directed generally to compounds which are peptide analogs of the GLP-1, as well as pharmaceutical compositions thereof, including a compound known as "Taspoglutide" or "BIM-51077," which is expected to be effective in diabetes and obesity treatment. *Id.* ¶ 2.

On December 7, 1998, Biomeasure filed four U.S. patent applications pertaining to certain GLP-1 analogs. *Id.* ¶¶ 32, 37. Two of those applications, U.S utility application serial number 09/206,833 ("the '833 Joint Application") and U.S. provisional application serial number 60/111,186 (collectively, "the Joint Applications"), named a Biomeasure employee, Dr. Zheng Xin Dong ("Dr. Dong"), and Dr. Coy as co-inventors, and were entitled "GLP-1 Analogs." *Id.* ¶ 33. U.S. Patent 7,368,427 has issued from the '833 Joint Application. *Id.* ¶ 34.

The two other applications, which were entitled "Analogues of GLP-1" and are the ones at issue in this suit, named Dr. Dong as the sole inventor and did not name Dr. Coy. *Id.* ¶ 37. Those applications, U.S. utility application serial number 09/206,601 and U.S. provisional application serial number 60/111255 ("the Biomeasure Only Applications"),

3

disclose and claim BIM-51077 compounds and compositions, both generically and specifically. *Id.* ¶ 39. Plaintiffs allege that Biomeasure filed and prosecuted the Biomeasure Only Applications on behalf of Ipsen Pharma and Ipsen. *Id.* ¶ 38.

Three issued patents—the '186, '213, and '628 Patents—and two pending patent applications claim priority to the Biomeasure Only Applications. *Id.* ¶¶ 42-44. Dr. Dong assigned the Biomeasure Only Applications to Biomeasure. *Id.* ¶ 45. Plaintiffs allege that Biomeasure then assigned all of its patent rights to SCRAS, the predecessor company to Ipsen Pharma. *Id.* Ipsen Pharma is the assignee of record at the U.S. Patent and Trademark Office for the Biomeasure Only patents and related applications. *Id.* ¶ 55.

Ipsen and/or Ipsen Pharma has since partnered with F. Hoffman-La Roche Ltd. ("Roche"), through various licenses and agreements, to develop and market the drug Taspoglutide, or BIM-51077, for the treatment of Type 2 diabetes. *Id.* ¶ 47-50. Ipsen has maintained, through communication with plaintiffs and a press release, that BIM-51077 originated from its research alone. *Id.* ¶¶ 52, 54.

Ipsen now moves to dismiss the complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) and for failure to state a claim pursuant to Rule 12(b)(6). For the following reasons, the Court lacks personal jurisdiction over Ipsen and the complaint against Ipsen is therefore dismissed.

## ANALYSIS

### 1. Legal Standard

The plaintiffs bear the burden of establishing personal jurisdiction over the defendant. To meet this burden, the "plaintiff[s] must allege specific facts on which

4

personal jurisdiction can be based; [they] cannot rely on conclusory allegations." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 332 F. Supp. 2d, 63, 66 (D.D.C. 2004) (citing *GTE New Media Servs., Inc. v. Ameritech Corp.*, 21 F. Supp. 2d 27, 36 (D.D.C. 1998), *remanded on other grounds sub nom. GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343 (D.C. Cir. 2000)). In assessing challenges to personal jurisdiction, the Court need not treat all of plaintiffs' allegations as true, and instead "may receive and weigh affidavits and other relevant matter to assist it in determining the jurisdictional facts." *United States v. Philip Morris Inc.*, 116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000) (internal citations omitted).

## 2. Section 293

Section 293 confers personal jurisdiction over foreign patentees on the District Court for the District of Columbia. It was "designed to assure a forum for suit in the United States in cases that otherwise might not be accommodated by either state or federal courts." *Nat'l Patent Dev. Corp. v. T.J. Smith & Nephew Ltd.*, 877 F.2d 1003, 1006-07 (D.C. Cir. 1898) (citation omitted). Specifically, Section 293 provides that:

> Every patentee not residing in the United States may file in the Patent and Trademark Office a written designation stating the name and address of a person residing within the United States on whom may be served process or notice of proceedings affecting the patent or rights thereunder. If the person designated cannot be found at the address given in the last designation, or if no person has been designated, the United States District Court for the District of Columbia shall have jurisdiction and summons shall be served by publication or otherwise as the court directs. The court shall have the same jurisdiction to take any action respecting the patent or rights thereunder that it would have if the patentee were personally within the jurisdiction of the court.

5

Ipsen argues that plaintiffs cannot obtain personal jurisdiction pursuant to Section 293 because Ipsen is not the owner or the assignee of the patent at issue, and is therefore not a "patentee" covered by the statute. I agree.

"The plain language of § 293 limits the exercise of personal jurisdiction to a foreign 'patentee.'" *Int'l Mfg. & Eng'g Servs. Co. v. Semiconductor Energy Lab Co.*, No. 06-1230, slip op. at 3 (D.D.C. July 16, 2007) (granting motion to dismiss for lack of jurisdiction because patent applicant was not a "patentee"). The term "patentee" is further defined by statute: "The word 'patentee' includes not only the patentee to whom the patent was issued but also the successor in title to the patentee." 35 U.S.C. § 100(d). Ipsen contends that plaintiffs have failed to allege that Ipsen itself is the owner or successor of any of the patents at issue. In fact, the complaint clearly states that "Ipsen *Pharma* continues to be the assignee of record at the USPTO for the Biomeasure Only patents and related applications." Compl. ¶ 55 (emphasis added). Plaintiffs nevertheless argue that one who obtains the benefit of a patent qualifies as a patentee under the statute, citing to *Deprenyl Animal Health, Inc. v. University of Toronto Innovations Foundation*, 297 F.3d 1343, 1353 (Fed. Cir. 2002) and *Hanes Corp. v. Millard*, 531 F.2d 585, 593 n.6 (D.C. Cir. 1976). I disagree. These cases, at best, are unpersuasive. In fact, plaintiffs acknowledged at oral argument that they had no case squarely on point on this issue and that they were, in essence, urging a novel interpretation of § 293. As such, I find that plaintiffs have not satisfied their burden to establish that the Court has personal jurisdiction over Ipsen as a patentee under 35 U.S.C. § 293.

6

### 3. Alter Ego Analysis

Undaunted, plaintiffs urge the Court to find personal jurisdiction over Ipsen by piercing the corporate veil between Ipsen and its subsidiaries, Ipsen Pharma and/or Biomeasure. Disregarding the separate identities of a corporate parent and its subsidiary is, of course, a rare exception grounded in equity considerations, and is only to be applied when, *inter alia*, "an adherence to the fiction of the separate existence of the corporation would sanction a fraud or promote injustice." *Diamond Chem. Co. v. Atofina Chems., Inc.*, 268 F. Supp. 2d 1, 7 (D.D.C. 2003) (quotation omitted); *see also Material Supply Int'l, Inc. v. Sunmatch Indus. Co.*, 62 F. Supp. 2d 13, 20 (D.D.C. 1999).

In determining whether personal jurisdiction exists, piercing the corporate veil can be used to attribute the subsidiary's contacts with the forum to the parent. *Diamond Chem.*, 268 F. Supp. 2d at 7 ("[w]here affiliated parties are 'alter egos' of a corporation over which the Court has personal jurisdiction . . . the corporation's contacts may be attributed to the affiliated party for jurisdictional purposes.") (quotation omitted). Plaintiffs argue that because Ipsen is the alter ego of Ipsen Pharma and/or Biomeasure, it is a de facto patentee and the Court can therefore exercise personal jurisdiction over Ipsen. Ipsen, by contrast, argues that this issue has already been determined in the earlier litigation in Louisiana, and that "the facts determined by the Louisiana court in arriving at its jurisdictional decision must be given preclusive effect by this Court." Def.'s Mot. 13. I agree.

"[O]nce a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action

7

involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). "To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153-54 (1979). The standards for establishing the preclusive effect of a prior holding are: (1) "the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case;" (2) "the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case;" and (3) "preclusion in the second case must not work a basic unfairness to the party bound by the first determination." *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992). "[I]f a court makes a substantive determination in order to arrive at a jurisdictional holding, the substantive determination can have issue preclusive effect so long as it was 'actually litigated and determined in the prior action.'" *NextWave Pers. Commc'ns, Inc. v. FCC*, 254 F.3d 130, 148 (D.C. Cir. 2001) (quoting *I.A.M. Nat'l Pension Fund, Benefit Plan A v. Indus. Gear Mfg. Co.*, 723 F.2d 994, 947 n.3 (D.C. Cir. 1983)).

Ipsen is correct that it is entitled to the benefit of issue preclusion as to whether Ipsen is the alter ego of Biomeasure. Indeed, the issue currently before this Court is the same as the one adjudicated and determined by the Eastern District of Louisiana: that is, whether or not jurisdiction over Ipsen can be exercised through its subsidiary, Biomeasure, through piercing of the corporate veil. *See Adm'rs of Tulane Educ. Fund v.*

*Biomeasure, Inc.* (*"Tulane I"*), 687 F. Supp. 2d 620, 624-27 (E.D. La. 2009). Plaintiffs argue that the Eastern District of Louisiana's findings are irrelevant because they related to the defendants' contacts to Louisiana. This argument, however, is also unpersuasive. In that case, though the ultimate inquiry was whether jurisdiction over Ipsen could be obtained under the Louisiana long-arm statute, the court necessarily addressed the relationship between Ipsen and Biomeasure (as well as Ipsen Pharma and Biomeasure) to determine whether Biomeasure was Ipsen's alter ego and thus, whether jurisdiction over Ipsen could be obtained by piercing the corporate veil. In this case, the jurisdiction over Ipsen again turns on the relationship between Ipsen and Biomeasure and whether or not corporate form should be disregarded.

Furthermore, the analyses used by this Court and the Eastern District of Louisiana are essentially identical. This Court employs the following two-pronged test to determine whether to pierce the corporate veil of a subsidiary: "(1) whether there is 'such unity of interest and ownership that the separate personalit[y] of [the subsidiary] no longer exist[s]'; and (2) whether an inequitable result will follow if the court treats [the subsidiary]'s allegedly wrongful acts as those of [the subsidiary] alone." *Material Supply*, 62 F. Supp. 2d at 20 (quoting *Smith v. Washington Sheraton Corp.*, 135 F.3d 778, 786 (D.C. Cir. 1998)). The first prong requires a showing that Ipsen's control over Ipsen Pharma and/or Biomeasure is "active and substantial." *Id.* (quotation omitted). In making this assessment, the Court considers "the nature of the corporate ownership and control; failure to maintain corporate minutes or records; failure to maintain corporate formalities; commingling of funds and assets; diversion of one corporation's funds to the

9

other's uses; and use of the same office or business location." *Id.* (citing *Labadie Coal Co. v. Black*, 672 F.2d 97-99 (D.C. Cir. 1982)).

Similarly, the Eastern District of Louisiana used the Fifth Circuit's seven-factor test, which looks to: "(1) the amount of stock owned by the parent of the subsidiary; (2) whether the two corporations have separate headquarters; (3) whether they have common officers and directors; (4) whether they observe corporate formalities; (5) whether they maintain separate accounting systems; (6) whether the parent exercises complete authority over general policy; and (7) whether the subsidiary exercises complete authority over daily operations." *Tulane I*, 687 F. Supp. 2d at 624-27 (citing *Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F.3d 331, 339 (5th Cir. 1999)). These factors are essentially identical to those facts that the two-pronged test in *Material Supply* was designed to elicit, and thus, the issue now before this Court has for all intents and purposes been previously adjudicated in the Eastern District of Louisiana. *See, e.g.*, Def.'s Reply 7.

Finally, plaintiffs will suffer no unfairness from being held to the prior finding because they had every incentive and opportunity to fully litigate the issue in the earlier case. Indeed, plaintiffs should not be permitted to forum-shop because they disliked the outcome of that earlier case. Thus, because the question of whether Ipsen is Biomeasure's alter ego has already been determined, by necessity, by the Eastern District of Louisiana and answered in the negative, and because no basic unfairness results from so doing, issue preclusion bars reconsideration of that finding. Accordingly, personal jurisdiction over Ipsen cannot be exercised by piercing the corporate veil between Ipsen and Biomeasure. What about the relationship between Ipsen and Ipsen Pharma?

The Eastern District of Louisiana did not directly consider that relationship. Plaintiffs nonetheless point to three facts that they contend demonstrate that Ipsen is the alter ego of Ipsen Pharma: (1) the shared officers and directors between the two companies; (2) that Ipsen's Operations Committees provide general guidance to Ipsen affiliates, including Ipsen Pharma, and (3) that in press releases, Ipsen claims to be the originator of Taspoglutide. *See* Pls.' Opp'n 5, 10, 13-15. But this alone, however, is not enough! After all, "it is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary acts." *Diamond Chem.*, 268 F. Supp. 2d at 9 (quoting *United States v. Bestfoods*, 524 U.S. 51, 69 (1998)). Nor is it unusual for a parent corporation to provide guidance to its subsidiaries. *See, e.g.*, *AGS Int'l Servs. SA v. Newmont USA Ltd.*, 346 F. Supp. 2d 64, 89-90 (D.D.C. 2004). Additionally, "joint promotion without more does not mandate the finding that a subsidiary is a mere shell for its parent corporation." *Diamond Chem.*, 268 F. Supp. 2d at 9.

Moreover, plaintiffs have also "failed to demonstrate that 'adherence to the fiction of the separate existence of the corporation would sanction fraud or promote injustice,'" as required by the second prong of the alter ego analysis. *Id.* at 9 (quotation omitted). They merely allege that inequity will result because Biomeasure "only receives the funding that Ipsen Pharma doles out," whereas "Ipsen has the proceeds from commercializing the GLP-1 patents." Pls.' Opp'n 15. While this may go to the inequity of not holding Ipsen or Ipsen Pharma liable for *Biomeasure*'s actions, it fails to demonstrate any particular injustice that would come from a decision not to pierce the

corporate veil between Ipsen and Ipsen Pharma. Thus, there is nothing in the record to indicate that Ipsen and Ipsen Pharma are alter egos, and personal jurisdiction over Ipsen cannot be exercised on this basis.[1]

### 4. Jurisdictional Discovery

Plaintiffs, not surprisingly, also seek the opportunity to take additional discovery to establish personal jurisdiction over Ipsen. Jurisdictional discovery, however, "is appropriate where the existing record is 'inadequate' to support personal jurisdiction and 'a party demonstrates that it can supplement its jurisdictional allegations through discovery.'" *Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1283 (D.C. Cir. 2005) (quotation omitted). Indeed, the district court may deny additional discovery when it could produce no facts that would affect the jurisdictional analysis. Here, plaintiffs had the opportunity to take jurisdictional discovery during the litigation in Louisiana. They now seek additional discovery to establish the following facts they claim would support jurisdiction:

> (1) Ipsen, through at least its Chairman and Chief Executive Officer, Jean-Luc Belingard, and its Executive Committee, exercises coordination and control over the internal affairs and operation of its wholly-owned subsidiary, defendant Ipsen Pharma S.A.S. ("Ipsen Pharma"); (2) Ipsen actively and substantially controls Ipsen Pharma such that Ipsen Pharma is an alter ego or mere instrumentality of Ipsen, including in

---

[1] Pendent personal jurisdiction "enable[s] [a] plaintiff to obtain personal jurisdiction over the defendant with respect to any of his claims that arose out of the same core of operative fact as those claims which clearly fell within the scope of § 293." *Oetiker v. Jurid Werke, G.m.b.H*, 556 F.2d 1, 4-5 & n.10 (D.C. Cir. 1977). Because the Court lacks personal jurisdiction over Ipsen on plaintiffs' patent claim, it cannot have pendent personal jurisdiction over the Massachusetts claims and dismisses these without prejudice.

> respect of the GLP-1 patent rights at issue in this case; and (3)
> Ipsen, including through its alter ego Ipsen Pharma, has
> obtained and controls all exclusive rights and economic
> benefits derived from the GLP-1 patents.

Pls.' Ex. 14 ¶ 5. Ipsen, however, has re-submitted declarations from Jean Luc Belingard,

Ipsen's Chief Executive Officer and Ipsen Pharma's Chairman, that were previously

submitted to and credited by the Eastern District of Louisiana in *Tulane I*. Def.'s Exs. B,

C. In those declaration, Belingard avers that each of the operating companies held by

Ipsen, including Ipsen Pharma, function independently of Ipsen, observe the requisite

business formalities, maintain their own accounting systems and bank accounts separate

from those of Ipsen, and "exercise independent authority over [their] daily operations,

including the hiring of employees, research, development, sales and marketing." Def.'s

Ex. B ¶ 4; *see also* Def.'s Ex. C ¶ 12. Thus, I find that there are no set of facts plaintiffs

could uncover through additional discovery that would alter the jurisdictional analysis set

forth above and therefore deny their request for additional discovery and grant Ipsen's

motion to dismiss for lack of personal jurisdiction.

## CONCLUSION

For all the foregoing reasons, Ipsen's Motion to Dismiss is hereby GRANTED.

An appropriate order shall accompany this memorandum opinion.

RICHARD J. LEON
United States District Judge