## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ADMINISTRATORS OF THE TULANE EDUCATIONAL FUND (A/K/A TULANE UNIVERSITY), *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>IPSEN PHARMA, S.A.S. (F/K/A SOCIETE CONSEILS DE RECHERCHES ET D'APPLICATIONS SCIENTIFIQUES SAS),<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  Civil Case No. 09-2428 (RJL)<br>)<br>)<br>)<br>)<br>)<br>) |

### MEMORANDUM OPINION
(December 2, 2011) [#58]

Plaintiffs in this case, the Administrators of the Tulane Educational Fund (a/k/a

Tulane University) ("Tulane") and David H. Coy ("Dr. Coy") (collectively, "plaintiffs")

filed this action against Ipsen Pharma, S.A.S. ("Ipsen Pharma") for correction of

inventorship of several U.S. patents pursuant to 35 U.S.C. § 256. In response to Ipsen

Pharma's counterclaims, plaintiffs have brought their own counterclaim against Ipsen

Pharma, contending that Dr. Coy is the sole inventor of the GLP-1 Patents. Ipsen Pharma

has moved to dismiss plaintiffs' counterclaim for failure to state a claim. For the

following reasons, the motion to dismiss is GRANTED.

### BACKGROUND

The facts of this case, and the particular patents at issue, have been amply

described in earlier opinions. *See* Mem. Op., Mar. 14, 2011, ECF No. 46; Mem. Op.,

Mar. 23, 2011, ECF No. 50.  The following factual recitation, however, relates

specifically to Ipsen Pharma and the claim that is subject to its motion to dismiss.

Ipsen Pharma, a subsidiary of Ipsen S.A., is engaged in the business of, among

other things, holding intellectual property rights for Ipsen S.A., including the GLP-1

patents.  Compl. ¶ 12, ECF No. 1.  Biomeasure is Ipsen Pharma's majority-owned

subsidiary.  *Id.* ¶ 14.

The initial research collaborations between Dr. Coy, Tulane, and Biomeasure were

governed by a Research Funding Agreement dated July 1, 1984, which was later

superseded by an amended Research Funding Agreement ("RFA").  *Id.* ¶¶ 15-16, 18.

Under its terms, the RFA covered various peptide research and studies conducted by, or

under the supervision and control of Dr. Coy.  *Id.* ¶ 17.  Tulane and Dr. Coy also agreed

to undertake a joint research project on "glucagon like peptides," or GLP-1 analogs.  *Id.* ¶

18.

During the relevant time period, Biomeasure and Tulane held routine joint

meetings.  *Id.* ¶ 25.  One was held on October 10, 1997 in the United Kingdom (the "UK

meeting") and another was held on March 20, 1998 in Milford, Massachusetts (the

"Milford meeting").  *Id.*  Representatives from Tulane and Biomeasure attended both

meetings.  *Id.* ¶¶ 25-26.

GLP-1 analog development was discussed at the UK meeting.  Also at that

meeting, Dr. Coy "specifically described to Biomeasure's researchers the genus of GLP-1

analogs that encompasses analogs modified at positions 8 and 35, which includes BIM-

51077," the subject of the '186 Patent, and instructed that such analogs should be made

2

and tested. *Id.* ¶ 28. Minutes from the UK meeting "reflect Biomeasure's acknowledgement that substitutions identified by Dr. Coy were unique and likely patentable." *Id.* ¶ 29.

At the Milford meeting approximately six months later, Tulane and Biomeasure researchers "again discussed current data on various GLP-1 analogs being made and tested in cell assays, and how substitutions at various positions affected activity. They also reviewed pharmaceutical profiles for treating non-insulin dependent (type II) diabetes [] with GLP-1 analogs." *Id.* ¶ 30.

Following those meetings, Tulane and Biomeasure "jointly implemented Dr. Coy's ideas, and made and tested several GLP-1 (7-36) analogs with position 8 and other substitutions." *Id.* ¶ 31. Plaintiffs sued for correction of inventorship of the patent covering the BIM-51077 compound, as well as for unfair business practices, unjust enrichment, and constructive trust under Massachusetts law. With respect to the plaintiffs' claim for correction of inventorship of the patent covering the BIM-51077, plaintiffs claimed that Dr. Coy should be named sole inventor or co-inventor of the GLP-1 patents. *Id.* ¶ 61. On March 23, 2011, this Court held that although plaintiffs successfully stated a claim for joint inventorship, plaintiffs failed to allege the level of conception necessary to state a claim for sole inventorship. *See* Mem. Op., Mar. 23, 2011, ECF No. 50.

On April 7, 2011, Ipsen Pharma filed an answer to plaintiffs' complaint, as well as its counterclaims. *See* Def.'s Answer to Compl., Apr. 7, 2011, ECF No. 51. Plaintiffs responded with their own counterclaim. *See* Pls.' Answer, Defenses, and Counterclaim

3

to Def.'s Counterclaim ("Pls.' Countercl."), May 2, 2011, ECF No. 55.  In their

counterclaim, plaintiffs again claim that Dr. Coy should be named sole inventor of the

GLP-1 patents.  Pls.' Countercl. ¶¶ 20-22.

## ANALYSIS

### I.    Legal Standard

A Court may dismiss all or part of a complaint that "fail[s] to state a claim upon

which relief can be granted." Fed. R. Civ. P. 12(b)(6).  In considering a motion to

dismiss, the Court may only consider "the facts alleged in the complaint, any documents

either attached to or incorporated in the complaint and matters of which [the court] may

take judicial notice." *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624

(D.C. Cir. 1997).  To survive a motion to dismiss made pursuant to Rule 12(b)(6), a

complaint must "plead[] factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129

S.Ct. 1937, 1949 (2009).  In evaluating a Rule 12(b)(6) motion, the Court construes the

complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that

can be derived from the facts alleged." *Schuler v. United States*, 617 F.2d 605, 608 (D.C.

Cir. 1979) (internal quotation marks omitted).  However, factual allegations, even though

assumed to be true, must still "be enough to raise a right to relief above the speculative

level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Moreover, the Court

"need not accept inferences drawn by plaintiff[] if such inferences are unsupported by the

facts set out in the complaint.  Nor must the court accept legal conclusions cast in the

4

form of factual allegations." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

## II.    Claim for Sole Inventorship of the GLP-1 Patents

Ipsen Pharma contends, as it did in their original complaint, that plaintiffs have failed to state a claim for sole inventorship. *See* Def.'s Mem. in Supp. of Def.'s Mot. to Dismiss ("Def.'s Mot. to Dismiss") at 1.  Inventorship requires conception, which is "complete only when the idea is so clearly defined in the inventor's mind that only ordinary skill would be necessary to reduce the invention to practice, without extensive research or experimentation." *Burroughs Wellcome Co. v. Barr Labs. Inc.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994).  In other words, the inventor must have "a specific, settled idea, a particular solution to the problem at hand, not just a general goal or research plan he hopes to pursue." *Id.* (citations omitted).

To support their claim for sole inventorship, plaintiffs allege that "Dr. Coy conceived of and disclosed to Biomeasure a genus of GLP-1 analogs that encompasses analogs modified at positions 8 and 35, which included BIM-51077 (the Taspoglutide compound) as well as specific compounds with substitution at positions 8 and 35 like those in BIM-51077." Pls.'s Counterclaim ¶ 8.  Plaintiffs further allege that "Dr. Coy specifically described to Biomeasure and its researchers the genus of GLP-1 analogs with modifications at positions 8 and 35, and specific compounds with such substitutions, including BIM-51077.  Dr. Coy further instructed Biomeasure that such substitution analogs should be made." *Id.* ¶ 9.  The Complaint also alleges that in 1998, "Dr. Coy reviewed with Biomeasure and its researchers current data on specific GLP-1 analogs

5

within the disclosed genus that had been made, and how substitutions at various positions affected activity and stability." *Id.* ¶ 11.

Except for a few minor and inconsequential changes, the allegations in plaintiffs' counterclaim are identical to those in plaintiffs' Complaint. *See* Def.'s Mot. to Dismiss at 2-4; Compl. ¶¶ 28-30; Pls.' Countercl. ¶¶ 8-11. Indeed, the substance of the two sets of allegations is the same. This Court has previously dismissed plaintiffs' claim of sole inventorship because plaintiffs failed to sufficiently allege the level of conception necessary to state such a claim. In its counterclaim, plaintiffs do not offer new allegations to remedy the deficiencies in the Complaint. Specifically, plaintiffs again fail to allege that the idea for the genus of GLP-1 analogs encompassed by the patents at issue was "so clearly defined" that only ordinary skill would be necessary to reduce the invention to practice. *See Burroughs Wellcome*, 40 F.3d at 1228. Thus, plaintiffs' renewed claim for sole inventorship must also be dismissed.

## CONCLUSION

For all the foregoing reasons, Ipsen Pharma's Motion to Dismiss [#58] is hereby GRANTED. An appropriate order shall accompany this memorandum opinion.


RICHARD J. LEON
United States District Judge

6